UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, } | |
| } | |
| Petitioner, } | |
| } | |
| v. } | Case No.: 2:24-cv-01537-RDP |
| } | |
| KANTI SUNKAVALLI, } | |
| } | |
| Respondent. } | |
| } | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Respondent's Motion to Quash Improper Service of IRS Summons and Unlawful Investigatory Overreach (Doc. # 11), as well as Respondent's "Objection, Answer, and Final Demand for Dismissal of Unlawful Summons Enforcement Proceedings," which the court construes as a motion. (Doc. # 13). The matter is now fully briefed. (Docs. # 11, 15; 13).[1] For the reasons discussed below, the Motions (Docs. # 11, 13) are due to be denied.

**I.  Background**

This case involves Respondent's failure to comply with an Internal Revenue Service ("IRS") summons and a court order enforcing that summons. IRS Agent Lisa P. Turner is conducting an examination of the tax liability of Jiva Enterprises for the Form 1041 tax period ending December 31, 2022. (Docs. # 1 ¶ 4; 1-1 ¶ 2). On June 5, 2024, Agent Turner issued an IRS summons directing Respondent to appear on June 25, 2024 at 1:30 p.m. at the IRS office in Birmingham, Alabama to produce the books, records, and other documents demanded in the summons and to testify regarding the tax liability of Jiva Enterprises. (Docs. # 1 ¶ 6; 1-2).

---

[1] The court did not order Respondent to file a Reply regarding the Motion to Quash (Doc. # 11), nor did it order the United States to file a Response to the Objection. (Doc. # 13).

Respondent did not comply. (Docs. # 1 ¶ 7; 1-1 ¶ 5). On November 12, 2025, the IRS filed a petition in this court to enforce its summons. (Doc. # 1). Respondent filed an Answer (Doc. # 3) that asserted various defenses, including that Jiva Enterprises was a private spendthrift trust, that the summons was improperly served,[2] and that there was an ongoing case against Respondent's accountant Tom Weickgenant regarding an allegedly unlawful raid by the IRS. (*Id.* at 3-16). The court issued a Show Cause Order setting the matter for a hearing on January 28, 2025. (Doc. # 2).

Respondent filed three documents on the day of the hearing, including two copies of a "Non-Disclosure Agreement" (one of which was signed by "Thomas Weickgenant") (Docs. # 5, 7) and an affidavit stating that Respondent was a "material fact witness" in a "pending federal lawsuit (Case No. 2:24CV281) filed in the United States District Court for the Eastern District of Texas." (Doc. # 6 at 1). During the hearing, Respondent repeatedly referred to the non-disclosure agreement(s) when declining to answer the court's questions about the purpose of the trust, the business of Jiva Enterprises, and why he had not complied with the IRS summons.

Respondent has not given any coherent answer as to why he did not comply with the IRS summons. The court informed him that it would enter an order enforcing the IRS summons and setting a new date for him to produce documents and testify to the IRS. The IRS suggested a date on which Respondent could appear, but Respondent requested that a later date be selected to accommodate his desire to attend an important family event. The court agreed, suggesting March 3, 2025, and Respondent confirmed that he would be able to appear before the IRS on that date. The court further accommodated Respondent by encouraging him to consult with counsel and giving him a full month in which to file a notice detailing any reasons (factual or legal) as to why he should not be required to respond. (*See* Doc. # 8). Respondent filed no such notice in this matter.

---

[2] At the January 28, 2025 hearing, the court ruled that the summons had been properly served pursuant to 26 U.S.C. § 7603 because it had been "left at [Respondent's] last and usual place of abode." *Id.* § 7603(a).

2

Respondent did, however, file a "Motion to Quash Improper Service of IRS Summons and Unlawful Investigatory Overreach" in a different matter before Judge Annemarie Axon, 2:24-mc-1538-ACA. He claims he thought that motion was filed in this case.

On March 6, 2025, the United States filed a Motion (Doc. # 9), alleging that Respondent did not comply with the court's Order. (Doc. # 8). Specifically, the United States attested that Respondent "did not appear at the Birmingham IRS Office" on March 3, 2025 (Doc. # 9 at 2 ¶ 2), the IRS did not receive any of the records that it had requested (and that the court had ordered Respondent to produce) (*id.* ¶ 4), and that the IRS "has not received any communication from the Respondent" since the hearing on January 28, 2025. (*Id.* at 3 ¶ 5). On March 11, 2025, the court granted the IRS's Motion and set this matter for a show cause hearing on March 25, 2025. (Doc. # 10 at 2).

On March 25, 2025, the court held the hearing, but Respondent failed to attend. The court reached Respondent by phone and discussed on the record how this case should proceed. During this discussion, and as noted above, Respondent says he intended to file the "Motion to Quash Improper Service of IRS Summons and Unlawful Investigatory Overreach" in this matter. Therefore, the court ruled that it would construe Document # 3 filed in 2:24-mc-01538-ACA as if it were filed in this case and ordered the United States to respond to the Motion. The Motion has now been entered on the docket for this matter. (*See* Doc. # 11).

II.   **Analysis**

    A.   **Motion to Quash**

Respondent's lengthy Motion to Quash (Doc. # 11) contains arguments that this court has already overruled as well as conclusory or irrelevant legal arguments that do not change his obligation to comply with the court's Orders (Docs. # 8, 10) as well as the IRS's summons. For

3

clarity, the court organizes its analysis using the same bolded headings and numbering as Respondent's Motion. (Doc. # 11).

## "NOTICE OF FRUIT OF THE POISONOUS TREE VIOLATION"

Respondent argues that he "is legally shielded from compliance with the IRS's summons due to the protection of **Federal Case #2:24CV281**." (Doc. # 11 at 3). Respondent appears to be arguing that because his "Trust Ledger" was seized in an allegedly unlawful raid on his accountant Thomas Weickgenant's ("Weickgenant") house, the IRS's investigation of his trust is barred because it is fruit of the poisonous tree. (*Id.*). However, the court already addressed this contention in the hearing on January 8, 2025, telling Respondent that he was not a party to that lawsuit and therefore did not have standing to make legal arguments in that lawsuit. And to the extent this presents any new argument, Respondent's argument is conclusory, stating that the IRS "unlawfully obtained these records." (*Id.*). To invoke the fruit of the poisonous tree doctrine, Respondent must have shown that the search was unlawful and that evidence "has been come at by exploitation of that illegality." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). Respondent has not explained (much less established) why the search of his accountant's home was unlawful, and he also has not shown that the evidence of his trust was "come at" through this search. *Id.* Therefore, the court dismisses this argument.

The court also notes that the United States has submitted a Declaration by Natalie Lord, Senior Program Analyst with the Small Business/Self-Employed Division of the Internal Revenue Service, in which Lord explains that she followed an administrative procedure for selecting Jiva Enterprises for review. (Doc. # 15-1 at 2-3). Lord was not even aware of the search in Texas at the time she pursued the administrative investigation – *i.e.*, she "first became aware of a search warrant possibly related to this case in preparing this declaration." (*Id.* at 3). Therefore, the information

allegedly gained from a search of Weickgenant's home is wholly unrelated to the summons Respondent challenges.

Respondent also argues that the IRS has committed due process violations by forum shopping, violating Respondent's "contractual protections" under an unspecified NDA or NDAs, demanding documents without a warrant, and attempting to compel self-incriminating information. (Doc. # 11 at 5). He vaguely describes other constitutional violations related to the IRS summons not being issued in good faith or not seeking relevant information and asserts that the IRS is "using fear and intimidation tactics to force Sunkavalli into compliance." (*Id.* at 5-6). In the January 28, 2025 hearing, the court orally overruled Respondent's arguments that the NDA(s) could block the IRS's enforcement actions.[3]

Additionally, Respondent's arguments about the need for a warrant are meritless because the IRS "need not meet any standard of probable cause to obtain enforcement of [IRS] summons." *United States v. Powell*, 379 U.S. 48, 52 (1964). The IRS is authorized by statute to demand documents without a warrant. *See* 26 U.S.C. § 7602(a). As to Respondent's other arguments, he cannot avoid complying with a summons by asserting legal conclusions about constitutional violations. Respondent provides no citations to caselaw or explanations of what the IRS has done to violate other constitutional provisions. Therefore, the court dismisses those arguments as well.

I.  **NEW EVIDENCE UNDER RULE 60(B) –**

Respondent invokes Federal Rule of Civil Procedure 60(b), which is only applicable to final judgments, none of which have been issued in this case. Therefore, the court dismisses the arguments made in this portion of his Motion. (Doc. # 11 at 7-11).

---

[3] The court also notes that these NDAs were entered into on the day of the hearing and well after receipt of the summons and document request. (*See* Docs. # 5, 7). So, they are hardly effective in preventing disclosure of these materials.

### II.     MISPRISION OF FELONY (18 U.S.C. § 4) –

Respondent argues that the IRS is engaging in "a deliberate and felonious abuse of power" and thus is "committing and concealing felonious misconduct under *18 U.S.C. § 4*." (*Id.* at 11-13). Although he claims he has explained "How The IRS'S Actions Constitute a Felony," he has not. As best the court can tell, Respondent implies that the alleged due process violations against Weickgenant constitute a felony and that the IRS is now committing misprision of felony by pursuing an enforcement action against him. (*Id.*). Respondent has not pointed to any felony or any other support for this argument. Further, to the extent this argument relates to Respondent's fruit of the poisonous tree theory, the court has already rejected that assertion.

### III.     RULE 4 SUMMONS VIOLATIONS – IMPROPER SERVICE –

Respondent argues that the IRS's summons failed to comply with service-of-process requirements in Rule 4 of the Federal Rules of Civil Procedure and 26 U.S.C. § 7603. (*Id.* at 14-18). The court already overruled this argument in the January 28, 2025 hearing and therefore does not address it again here.

### IV.     FRUIT OF THE POISONOUS TREE DOCTRINE – ILLEGALLY OBTAINED EVIDENCE –

Respondent again raises the "fruit of the poisonous tree doctrine" without providing an explanation as to why the execution of a search warrant within Weickgenant's house was invalid. (*Id.* at 18-21). Although Respondent cites several court cases, he merely repeats their key holdings and does not explain how those holdings support his arguments. As the court stated in the January 28, 2025 hearing (and as further discussed above), the action involving Weickgenant is irrelevant to the question of enforcing a summons against Respondent.

V.    **IRS ABUSE OF POWER & PARALLEL ENFORCEMENT TACTICS –**

Respondent argues that the "IRS has engaged in a pattern of abuse and overreach, exceeding its lawful authority through parallel enforcement actions designed to intimidate, coerce, and unlawfully target individuals and entities outside the proper scope of its investigation." (*Id.* at 23). This, too, appears to be connected to the search of Weickgenant's home. The court simply cannot decipher Respondent's legal argument. For example, it is unclear why Respondent contends that the IRS is not "conducting a legitimate audit or investigation of tax compliance." (*Id.* at 24). Respondent makes other legal conclusions without supporting them: that the IRS "is improperly using enforcement tools," "violating attorney-client privilege," or otherwise acting not in good faith. (*Id.* at 24-25). He also presents an incoherent reference to a purported First Amendment violation by the IRS. (*Id.* at 25). Respondent's arguments on these points are without merit.

VI.    **SUMMONS OVERREACH & CONSTITUTIONAL VIOLATIONS –**

Respondent argues that the IRS's summons exceeded a lawful investigative scope because it demands items that are not related to tax records. (*Id.* at 28-29). He does not cite any caselaw to specify what type of information is related to tax records and does not further explain this point. This argument is meritless.

VII.    **PROCEDURAL VIOLATIONS & LACK OF OVERSIGHT**

Respondent argues that the IRS has committed various "procedural violations" because widespread remote work "among federal employees . . . raises serious concerns regarding procedural integrity and adherence to lawful investigative practices." (*Id.* at 32). This argument is wholly speculative. Further, it essentially bootstraps off Respondent's assertion that the IRS failed to properly serve the summons. (*Id.* at 33).

Respondent also asserts, with no elaboration or support, that the IRS's summons and actions "directly interfere with the ongoing federal case" in the Eastern District of Texas. (*Id.* at 34). Respondent further argues, with no citation, that "Federal courts have consistently held that private *spendthrift* trust records require judicial oversight . . . before disclosure can be compelled." (*Id.* at 36). Respondent adds that the IRS has "challenged legally valid NDAs between tax professionals and their clients," but does not explain how the IRS has done so in this matter. (*Id.* at 37). These arguments are conclusory and, in any event, have already been rejected by the court.

## VIII. RULE 60(B) – IRS TARGETING OF COPYRIGHT-REGISTERED TRUSTS & IRS' INVESTIGATIVE OVERREACH

Respondent again references Rule 60(b) (*id.* at 39-45), which the court has already explained is only applicable to challenging a final judgment. As there has been no final judgment in this case, this Rule is inapplicable at this stage.

## IX.     IRS CRIMINAL MISCONDUCT – MISPRISION OF FELONY, ABUSE OF POWER & MALICIOUS PROSECUTION

Respondent again references 18 U.S.C. § 4, this time arguing that "despite receiving lawful notice, IRS officials knowingly continued their unconstitutional enforcement actions, making them **complicit in felony misconduct**." (*Id.* at 47). Because this "felony misconduct" appears to be the same type of misconduct raised and overruled earlier, the court again rejects this argument.

Respondent also baldly asserts that the IRS is targeting "tax clients of Asian descent," because "[t]he IRS knows that individuals of Asian descent are culturally more likely to comply with authority – even when unlawful." (*Id.* at 50). He cites two cases filed against himself in the Northern District of Alabama as well as two other cases filed against two other individuals in Texas. (*Id.* at 51-52, 55). The IRS may apply to a district court in the district in which a taxpayer

8

resides for enforcement, which is what the IRS did here by bringing two enforcement actions filed against Respondent (who lives in the Northern District of Alabama). Other than putting forth a conclusory allegation, Respondent has not pointed to anything unlawful in these actions.

## X.      LAWFARE – IRS WEAPONIZATION OF LEGAL TACTICS

Respondent argues that the IRS has engaged in "lawfare" by weaponizing the legal process "to intentionally overwhelm taxpayers." (*Id.* at 57-58). But, there is nothing illegal in what the IRS has done – indeed, as explained, the IRS is authorized to issue a summons, 26 U.S.C. § 7602(a), and to apply to the district court for enforcement of the summons. 26 U.S.C. § 7604(b). There is nothing inherently wrong (and certainly nothing that is per se illegal) with the IRS issuing multiple summonses or filing multiple enforcement actions. Again, although Respondent purports to offer legal support for his position, he merely summarizes the holdings of certain cases without explaining any connection between those holdings and his legal arguments here. (Doc. # 11 at 59).

## XI.     GROUNDS FOR RELIEF and

## XII.    LEGAL ARGUMENT

Respondent argues that the IRS is violating his Fifth Amendment right against self-incrimination. (*Id.* at 60-61). However, a taxpayer may not invoke the Fifth Amendment as a blanket protection against disclosure; rather, he must identify what specific items in the summons would violate his rights. *See United States v. Schiff*, 612 F.2d 73, 83 (2d Cir. 1979); *United States v. Daly*, 481 F.2d 28, 30 (8th Cir. 1973), *Rader v. Commissioner*, 143 T.C. No. 19 (2014). Because Respondent has not done so here, the court rejects this conclusory argument.[4]

---

[4] Respondent also repeats arguments he has already made about improper service, a Fourth Amendment violation, an overbroad IRS summons, and parallel enforcement actions. (Doc. # 11 at 60-66). The court has already rejected these arguments and does so again.

9

XIII.   CONDITIONAL ACCEPTANCE and

XIV.    FINAL THOUGHTS & CONCLUSION

Respondent states that he "asserts a Conditional Acceptance." But, that is a term in contract law that is inapplicable here. A taxpayer cannot escape compliance with an IRS summons by announcing that such compliance is "strictly contingent upon" the IRS's compliance with the taxpayer's unsupported interpretation of the law. (*Id.* at 66-67). Because Respondent has not asserted any meritorious arguments as to why he should not be required to comply with the IRS summons, the court denies Respondent's requested relief of quashing the IRS summons, as well as the other requested relief detailed under "**FINAL THOUGHTS & CONCLUSION**." (*See id.* at 68-79).

XV.     ADMINISTRATIVE NOTICE & PROOF OF SERVICE – DOCUMENTED RECORD OF IRS'S FAILURE TO RESPOND

Respondent states that Thomas Weickgenant served the IRS with "formal notification of their constitutional violations." (*Id.* at 70-71). The court cannot decipher how this is even tangentially relevant to the IRS summons issued to Respondent.

XVI.    THE COURT MUST SUPPRESS THE IRS'S SUMMONS & PREVENT FURTHER CRIMINAL CONDUCT

Respondent continues to discuss the "damage inflicted upon Thomas Weickgenant and his private spendthrift trust tax clients" and argues that the court has a duty to "end the injury, harm, and damage." (*Id.* at 71, 74).[5] This court has jurisdiction over Respondent. It lacks jurisdiction over any action brought against or instigated by Weickgenant in Texas. Respondent next lists thirteen "high-ranking IRS officials" whom he argues must be held accountable (*id.* at 74-75), and

---

[5] He also asserts that a judge who would "allow these violations to continue [is] complicit in judicial misconduct." (*Id.* at 74). That argument simply cuts no ice at all.

10

twenty-one "IRS agents/employees" whom also "Must Be Held Accountable for willfully participated in constitutional violations." (*Id.* at 75-77). Again, the court cannot decipher how this is relevant to the IRS summons issued to Respondent.

### FINAL LAWFUL – JUDICIAL CONCLUSION:

In closing, Respondent warns that "[i]f this Court fails to uphold justice and constitutional **'Due Process of Law'**, [he] will be compelled to file a **'Quo Warranto Mandamus'** and **'FOIA Request.'**" (*Id.* at 78). To the extent that this is some type of veiled threat, Respondent is cautioned that the court will not tolerate such behavior.

### B.    Objection, Answer, and Final Demand

Respondent's additional Motion (entitled "Objection, Answer, and Final Demand for Dismissal of Unlawful Summons Enforcement Proceedings") (Doc. # 13) contains arguments that this court has already overruled as well as inapposite legal arguments that do not change his obligation to comply with the court's Orders (Docs. # 8, 10) and the IRS's summons.

Respondent first "incorporates by reference all prior filings made in this matter." (Doc. # 13 at 5). There is no need to incorporate prior filings by reference and, in any event, the court has addressed all prior filings and need not do so again. The same is true for Respondent's repeated arguments related to his Motion to Quash. (*Id.* at 6).

Respondent also demands judicial findings of fact and conclusions of law under Rule 52(a), but he misunderstands that Rule 52(a) only requires findings of fact and conclusions of law for actions tried, not for ruling on a motion. Fed. R. Civ. P. 52(a)(1), (3).

Respondent's "contractual protections and NDA violations" arguments appear to repeat what the court has already overruled, so there is no need to re-evaluate them here. (*See* Doc. # 13 at 8-9).

Finally, Respondent argues that there have been "Verified due process violations caused by dual court case numbers (**01537-RDP** and **01538-ACA**)." (*Id.* at 10). It is not a due process violation to have multiple proceedings initiated against an individual. To be clear, this was not the result of a mistake. These cases concern enforcement of two separate IRS summonses (one against "Jiva Worldwide," and one against "Jiva Enterprises"). They are not duplicative. (*See* Doc. # 13 at 3(e)(iii)-(iv)). For this reason, the court will deny Respondent's request for "immediate confirmation that all filings and objections be judicially noticed across both case numbers to preserve due process and eliminate procedural misrepresentation." (*Id.* at 3).

### III.   Conclusion

Respondent's Motions (Docs. # 11, 13) are **DENIED**. Respondent has asserted no meritorious legal or factual basis for his non-compliance with the IRS's summons and two court orders. (Docs. # 8, 10). Therefore, Respondent **SHALL** be prepared to **SHOW CAUSE** as to his non-compliance at the upcoming hearing on **April 9, 2025**.

**DONE** and **ORDERED** this April 7, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE